UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JAMES MICHAEL DAYSON,

               Plaintiff,                    Case No. 2:12-cv-451

v.                                       Honorable Robert Holmes Bell

PATRICIA CARUSO, et al.,

               Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff James Michael Dayson, a state prisoner currently confined to the Kinross Correctional Facility (KCF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Patricia Caruso, Catherine Bauman, Mary Berghuis, Tom Birkett, Raymond Booker, David Borgh, Sherry Burt, Michael Curley, Cindi Curtin, Shirlee Harry, Bonita Hoffner, Paul Klee, Duncan MacLaren, Ken McKee, Robert Napel, Carmen Palmer, Mitch Perry, John Prelesnik, Lloyd Rapelje, Joan Roggenbuck, Kenneth Romanowski, Steve Rivard, Debra Scott, Willie Smith, Linda Tribley, Millicent Warren, Heidi Washington, Jeff Woods, and Unknown Parties.

In his complaint, Plaintiff asserts that in this action, he represents the interests of all state prisoners incarcerated by the Michigan Department of Corrections (MDOC) and lists numerous instances of wrongdoing by Defendants. Plaintiff states that he was a prisoner representative on the Warden's Forum at Lakeland Correctional Facility, but that when he began to question the propriety of paying unskilled storekeepers $80,000 to $90,000 a year, he was transferred to KCF. Plaintiff asserts that Defendant Wardens have encouraged the unfair practice of issuing false misconduct tickets in order to eliminate effective prisoner representatives, as well as the approval of immediate "emergency" transfers of prisoner representatives who inquire about past Prisoner Benefit Fund appropriations.

Plaintiff contends that the practice in the MDOC of allowing double-bunking of prisoners in segregation and Level IV facilities has resulted in an increase in prisoner on prisoner crime, as well as on suicides. Plaintiff claims that the Wardens of Saginaw and Brooks Correctional Facilities are responsible for scalding water temperature in the showers at their facilities and that Defendant Caruso is responsible for negotiating a contract with a satellite television company that

charges exorbitant rates for basic services. Plaintiff states that Defendant Caruso failed to solicit input from inmates, who are obligated to pay for the multi-million dollar contract. Plaintiff also asserts that inmates who do not even own television sets must pay for cable service.

Plaintiff states that Defendant Caruso approved Policy Directive 03.02.130, which provides for prisoner / parolee grievances. Plaintiff states that prison officials target prisoners who file grievances writing fake misconduct tickets on them, having them placed in segregation, confiscating their property, and transferring them to other prisons. Because of this conduct, most prisoners have been "chilled" in filing grievances. Plaintiff further contends that prisoners who file grievances never obtain any relief because they are discriminated against at every level.

Plaintiff allege that KCF has been expanded far beyond its original capacity, and that G-Unit currently houses 158 prisoners, who are forced to wait in a line to use four toilet stalls. Plaintiff states that units B-1, C-1, D-1, and E-1 each house 84 prisoners, who are forced to share two shower stalls. The competition among inmates for the limited sanitary provisions causes conflicts.

Finally, Plaintiff alleges that he is an American Indian and that his religious preference is "Native American Traditional Ways" (NAIW). Consequently, Plaintiff requires the use of tobacco for prayer, as well as an abalone shell, sage, cedar, sweetgrass, and matches to ignite the smudging ingredients. Defendant Caruso disallowed tobacco in all correctional facilities in January 2009, so that the possession of tobacco now results in a major misconduct conviction and placement in segregation. Plaintiff states that some Wardens allow tobacco for religious ceremonial purposes, while others will only allow a religious volunteer to bring tobacco into the facility. In addition, some Wardens will allow religious property, while others will not. While Plaintiff was

confined at the Lakeland Correctional Facility, he was allowed to possess a Native American flute, but when he was transferred to KCF, the flute was confiscated. Plaintiff received a hearing on the flute, and was told that it was prohibited at KCF. Plaintiff was instructed to have the flute sent home or it would be destroyed.

Plaintiff states that Defendant's conduct constitutes a violation of the First, Eighth, and Fourteenth Amendments. Plaintiff seeks nominal, compensatory and punitive damages, as well as equitable relief.

## **Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

- 4 -

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that his Eighth Amendment rights, and the rights of all MDOC prisoners, are being violated by overcrowding at KCF and other prisons, double-bunking of prisoners, and scalding water temperatures in the showers at Saginaw and Brooks Correctional Facilities. However, Plaintiff fails to allege any specific facts regarding his personal situation in relation to this claim. In *Rhodes v. Chapman*, 452 U.S. 337 (1981), the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment. Rather, Plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation, or other necessities. 452 U.S. at 348. Plaintiff's bare allegations of overcrowding fail to meet this standard. Therefore, his Eighth Amendment claims are properly dismissed.

- 5 -

Plaintiff claims that the MDOC's contract with a provide for cable television somehow violates his due process rights, asserting that he and other prisoners are required to pay for this usage. However, Plaintiff fails to allege any specific facts in support of this assertion. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Pro'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Because Plaintiff's allegations do not support a finding that he had a protected interest relating to the MDOC's cable television contract, this claim is properly dismissed.

Plaintiff also claims that the deprivation of his Native American flute when he was transferred to KCF violated his due process rights. Plaintiff concedes that he received a hearing regarding the confiscation of his flute. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional;

- 6 -

what is unconstitutional is the deprivation of such an interest *without due process of law*."  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original).  Further, an inmate has no right to counsel in disciplinary proceedings.  *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).  Therefore, it is clear that Plaintiff received due process of law.

　　　　Plaintiff further claims that the deprivation of his flute violated his First Amendment free exercise right.  While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

　　　　While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests."  *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

    1.    does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

- 7 -

Case 2:12-cv-00451-RHB-TPG Doc #7 Filed 07/17/13 Page 8 of 11 Page ID#56

2.      are there alternative means of exercising the right that remain open to prison inmates;

3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

The court notes that Plaintiff makes no allegations that the flute was religious within his own scheme of things. Plaintiff does not allege that the removal of the flute in any way infringed upon his sincerely held religious practice or belief. Therefore, Plaintiff has not alleged the manner in which his First Amendment right to the free exercise of religion was impaired. Because Plaintiff

- 8 -

has not alleged that the flute was necessary for or part of the practice of his religion, he fails to state a claim for a violation of his First Amendment rights.

Moreover, despite Plaintiff's assertions that restrictions on tobacco, herbs, and other ingredients of smudging exist in the MDOC, he fails to allege that such restrictions directly affected his right to freely practice his religion. Therefore, Plaintiff's First Amendment claim regarding these restrictions is properly dismissed.

Plaintiff claims that he was a prisoner representative on the Warden's Forum at Lakeland Correctional Facility, but that when he began to question the propriety of paying unskilled storekeepers $80,000 to $90,000 a year, he was transferred to KCF. Plaintiff asserts that KCF is the most violent facility in the state, but fails to allege any specific facts in support of this assertion. Plaintiff contends that this transfer was retaliatory. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The court assumes for the sake of argument that Plaintiff's participation in the Warden's Forum is constitutionally protected conduct for which a prisoner cannot be subjected to

- 9 -

retaliation. Plaintiff, however, cannot show that his transfer to KCF was an adverse action. In *Hill v. Lappin*, 630 F.3d 468, 474 (6th Cir. 2010), the Sixth Circuit court held that transfer to a lock-down unit at another facility is more than just a transfer, and is more akin to the transfer in *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005), in which the consequence of transfer would affect the prisoner's ability to pay his lawyer, thereby affecting his access to the courts. However, the transfer in this case was a lateral transfer. Plaintiff's conclusory assertion that the prison population at KCF is more violent than Lakeland is insufficient to show that the transfer constituted an adverse action.

Finally, the court notes that temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). In this case, Plaintiff's assertion that his transfer was retaliatory is entirely conclusory. Therefore, this claim is properly dismissed.

With regard to Plaintiff's claim that the prisoners are commonly retaliated against for filing grievances is both vague and conclusory. Therefore, this claim does not merit consideration by the court.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: July 17, 2013                    /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE